J-A22007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF S.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.M., FATHER | No. 1628 EDA 2018 |

Appeal from the Decree Entered April 30, 2018
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2017-A-0186

| | |
|---|---|
| IN RE: ADOPTION OF L.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.M., FATHER | No. 1629 EDA 2018 |

Appeal from the Decree Entered April 30, 2018
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2017-A-0187

BEFORE: BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:           **FILED DECEMBER 05, 2018**

S.M. ("Father") appeals from the decrees entered on April 30, 2018, that granted the petitions filed by the Montgomery County Office of Children and Youth ("OCY") to involuntarily terminate his parental rights to S.M. (born in June of 2015) and L.M. (born in May of 2013) (collectively "Children"), pursuant to sections 2511(a)(1), (2), (8), (11), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1] After careful review of the record and applicable law, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The parental rights of Children's mother, T.B. ("Mother"), were terminated by separate decrees entered on the same date. Mother is not a party to this appeal.

OCY first became involved with Father, Mother, and Children in June of 2016, after receiving multiple referrals regarding the family. On April 30, 2017, at the conclusion of a three-day termination hearing, the trial court issued the following findings of fact from the bench:

Throughout this hearing[,] this [c]ourt has heard evidence regarding the repeated displays of admitted poor judgment by the birth parents.

Admitted Exhibit OCY-9 shows that [Father] was convicted and began a state sentence in 2000[,] for rape, aggravated sexual assault and deviant sexual assault. His two victims were children, family friends, females age 11 and 13. Because of these convictions, [Father] is subject to sex offender conditions including a requirement to register as a sex offender. [Father] remains on probation supervision today.

[Mother] is addicted, admittedly, to pain medications. [Father], while they were together, assisted [Mother] in obtaining those drugs….

The relationship of the birth parents was described by numerous witnesses as chaotic and toxic.

2016 was a pivotal year for this family. The birth parents experienced unstable housing, at one point living with seven other people. There were 103 police contacts with the New Hanover Police Department, culminating with the issuance of a PFA against [Father] during the summer of 2016. However, the birth parents continued to see each other.

[Father] was jailed … for violating the terms of his PFA[,] and he served three months in the Montgomery County Correctional Facility.

During this time[,] [Mother] entered drug rehab.

[Children] were placed with the maternal grandmother in June of 2016. When the maternal grandmother became ill, [Children] went into the legal custody of OCY in October of 2016.

OCY Exhibits 3, 4 and 5 contain Family Service Plans. These documents were admitted into evidence…. The Family Service

Plan goals were to provide housing and all of the other things that children need[:] employment; drug treatment for [Mother]; anger management treatment, training, [and] counseling … for [Father]; parenting [classes] for both parents; and, importantly, cooperation with whatever services that OCY provided.

During a meeting with the OCY staff in January of 2017, [Father] became angry that [Mother] brought her fiancé to the meeting and smashed car windows. As a result[,] [Father] was imprisoned for six months[,] and he was released at the end of September 2017.

OCY filed this petition … to terminate the parental rights of both parents the following month.[2]

Throughout this hearing[,] this [c]ourt has heard no progress for [Mother] related to her Family Service Plan goals and next to little and minimal progress for [Father]. The only exception being that of employment.

…

[Father] has fallen short in his goal of meeting housing [requirements], living with his mother in a one-room setting. He is, however, employed.

[Father] took parenting classes[,] completing nine of twelve sessions offered.

In this case[,] [Father's] biggest issue is rage. There is an anger that needs to be controlled before … these kids are safe. That rage is still outstanding.

[Father] testified that he attended anger management classes while in state prison. Either it wore off or it never took effect. However, there was little to no impetus to pursue that Family Service Plan goal to date. There is, according to [Father's] testimony, scheduled training, but today is the day in court that everybody looks forward to. This is the day to have all of your

_____

[2] On October 18, 2017, OCY filed a petition to involuntarily terminate the parental rights of Father to Children, and alleged sections 2511(a)(1), (2), (8), and (b) as grounds for termination. On January 23, 2018, OCY amended its petition to include section 2511(a)(11).

ducks in a row, because this is the day that [the court is] looking at.

There was no doubt … that both birth parents love their kids. That was so evident to [the court].

[Father] never missed a visit. That was commendable.

…

The two children in this case entered OCY with problems. [L.M.] needed speech therapy. He had behavior issues and required extensive dental work to the point of needing anesthesia….

[S.M.], at two years old, had mobility issues, walking on her tiptoes. She was behind in her immunizations. She also had speech problems as well as limited behavioral issues and the dental issue of one cavity at the age of two.

N.T. Termination, 4/30/18, at 139-144. The court entered final decrees which terminated Father's parental rights to Children pursuant to sections 2511(a)(1), (2), (8), (11), and (b), and granted OCY's request for a change of permanency goal to adoption. *Id.* at 154.

On May 25, 2018, Father filed notices of appeal as to each child.[3] Herein, Father presents the following issues for our review:

1. Did the honorable trial court err in terminating [Father's] parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(1)[,] where [] Father[:] (i) attended every available visitation with [Children], (ii) showed appropriate affection and love for [Children] during his visitations, (iii) maintained a positive presence in the lives of [Children], (iv) effectively parented prior to [OCY] taking custody of [] Children and during visitations with [] Children, (v) made reasonable efforts to comply with the family service plan, and (vi) where the record is devoid of any evidence of drug abuse as outlined in [OCY's]

_____

[3] The appeals at 1628 and 1629 EDA 2018 were consolidated *sua sponte* by *per curiam* order of this Court, as these matters involve related parties and issues. *See* Order, 6/26/18.

- 4 -

amended petition for involuntary termination of parental rights?

2. Did the honorable trial court err in terminating [Father's] parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2)[,] where [] Father[:] (i) obtained stable employment, (ii) obtained mental health treatment, (iii) made reasonable efforts to comply with the family service plan, (iv) presented evidence of availability of suitable housing, (v) addressed the concerns of [OCY], (vi) maintained a positive presence in the lives of [] Children, and (vii) the record is devoid of evidence that [Father's] repeated incapacity, abuse, neglect, or refusal of the parent has caused [] Children to be without parental care, control, or subsistence necessary for [] Children's physical and mental well-being or that such conditions will not be remedied by [Father]?

3. Did the honorable trial court err in terminating [Father's] parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8)[,] where [] Father[:] (i) obtained stable employment, (ii) obtained mental health treatment, (iii) presented evidence of the availability of suitable housing were he to regain custody, (iv) made reasonable efforts to comply with the family service plan, (v) addressed the concerns of [OCY], and (vi) maintained a positive presence in the lives of and a strong bond with [] Children?

4. Did the honorable trial court commit error by involuntarily terminating [Father's] parental rights to [] Children where the evidence confirmed that a strong and loving bond existed between [] Father and [] Children and that [OCY] was unable to establish by clear and convincing evidence that termination was in the best interests of [] Children, as contemplated by 23 Pa.C.S.[] § 2511(b)?

5. Did the honorable trial court err in terminating [Father's] parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(11)[,] where the provision permitting termination on grounds of needing to register as a sexual offender are unconstitutional as (i) overbroad in that the provision [possesses] no correlation to the ability to parent or serving the needs of [] Children and paints all respondents with the same broad brush, and (ii) constituting *ex post facto* punishment?

6. Did the honorable trial court err in terminating [Father's] parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(11)[,]

where (i) his required registration as a sexual offender, pursuant to 42 Pa.C.S.[] Ch. 97, will likely expire in November 2018[,] pursuant to **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), (ii) [OCY] did not present evidence that [Father] posed a danger to his Children, and (iii) [Father's] probation officer testified [Father] requested and received permission to be with his Children?

7. Did the honorable trial court err in admitting and relying upon hearsay evidence within the certified records of [Father's] criminal matters?

Father's Brief at 4-5 (unnecessary capitalization omitted).

We review an appeal from the termination of parental rights under the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, … 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; **R.I.S.**, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; **see also Samuel Bassett v. Kia Motors America, Inc.**, … 34 A.3d 1, 51 (Pa. 2011); **Christianson v. Ely**, … 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**
>
> As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an

appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, … 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under [s]ection 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted).

This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decree pursuant to section 2511(a)(1) and (b), which provide as follows:

> **(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > …
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to section 2511(a)(1). In ***In re C.M.S.***, 832 A.2d 457 (Pa. Super. 2003), we noted:

To satisfy [s]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*Id.* at 461 (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). In *C.M.S.*, we further acknowledged the following statement by our Supreme Court:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life[."]

*C.M.S.*, 832 A.2d at 462 (quoting *In re Burns*, 379 A.2d 535, 540 (Pa. 1977)).

Here, Father avers that he substantially complied with the family service plan goals and maintained a loving bond with Children. Father's Brief at 10. He claims to have "displayed an affirmative demonstration of parental devotion, taking and maintaining a place of importance in his children's life." *Id.* at 11 (internal quotation marks and citations omitted). In support of his argument, Father notes that he attended every visitation offered to him. *Id.* Moreover, while he admits that he did not have contact with Children during

- 9 -

his periods of incarceration, Father states that he immediately contacted OCY regarding resuming visitation with Children upon his release from custody. *Id.*

Contrary to Father's assertions, OCY reports that Father has made only minimal progress on reaching his family service plan goals. OCY's Brief at 11. The OCY caseworker, Ms. Dolan, states that her interactions with Father have been "uncontrollable, rageful, angry."[4] *Id.* (quoting N.T. Termination, 3/15/18, at 155). OCY further indicated:

> After he was released from incarceration in September of 2017, [Father] failed to maintain contact with Ms. Dolan, except through his sister in-law. Father has failed to make progress since his release in September of 2017, because he lacks suitable housing and has failed to engage in individual therapy. He failed to sign a release for Ms. Dolan and failed to provide documentation of prescribed medication to her. He has failed to complete anger management.

*Id.* (internal citations to record omitted).

The trial court found that Father failed to perform his parental duties, which established grounds for termination under section 2511(a)(1). Looking

---

[4] Ms. Dolan testified that Father "often became angry on the phone with her, yelling and not listening, and he exhibited rage and anger and inability to respect personal space." *Id.* at 5-6 (citing N.T. Termination, 3/15/18, at 138-139). Ms. Dolan also described Father's behavior as "'explosive' to the point where an individual was fearful of him." *Id.* at 6. She testified that Father's behavior at the PFA hearing displayed "anger, erratic, yelling screaming, cursing and not listening, to the point where the guards and police officers intervened to calm him down." *Id.* At a subsequent hearing in February of 2017, Ms. Dolan observed Father "to be unable to control his rage, screaming at her and at Mother and, again, sheriffs intervened to attempt to calm him down." *Id.*

specifically at the six-month period prior to the filing of OCY's petition (April to October 2017), the court observed:

> [F]ather did not outwardly display a settled intent to relinquish his parental claim to [] [C]hildren[;] however, as [] [F]ather admitted in testimony, his poor judgment was really to his detriment. [] [F]ather had previously been in jail for three months due to the PFA violation, and to subject himself to another PFA violation just shows blatant disregard for the needs and the requirements of [] [C]hildren. What are they supposed to do while [Father is] in jail?

N.T. Termination at 144-145. The court concluded that it could only view Father's repeated lack of judgment as a failure to perform his parental duties. *Id.* at 145. It then further stated:

> [P]arental duty requires that the parent act affirmatively. That means you have to do something with a good faith interest. You can't lie. You can't omit. You can't skirt around the truth and you have to use a good faith effort and not yield to every problem that comes up, even in difficult situations. A parent must use all available resources and exercise reasonable firmness to resist obstacles placed in the path of maintaining that parent-child relationship.
>
> [The court] didn't see that. Instead, [it] saw [F]ather succumbing to the temptations before him such that he was incapable of containing his own behavior, therefore[,] violating the terms of a PFA, which made him subject to increased incarceration.

*Id.* at 145-146. Based on the testimony at the termination hearing, as well as the documents entered into evidence, the trial court concluded that there was clear and convincing evidence to terminate Father's parental rights under section 2511(a)(1). We deem the trial court's determinations to be supported by sufficient, competent evidence in the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to reviewing whether the requirements of subsection (b)

are met. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Instantly, Father avers that his testimony at trial established "a clear, strong, and loving bond" between himself and Children. Father's Brief at 15. In support of his claim, Father states that he attended every available visitation with Children, was responsive to the needs of Children, and demonstrated appropriate communication with them. *Id.* at 15-16. Father further notes:

> L.M., the older of the two children, often asked about Father and expressed his love for Father to others. L.M. told others that he was going to visit with Father soon, and asked others about Father. L.M. was excited for visitations with Father, and became

- 12 -

upset at the conclusion of visitations. Even with L.M.'s foster mother, he expressed activities he performed with Father.

Father cared for S.M., giving her a bottle, changing her diaper and performing other parental duties. S.M. would smile at Father and put her arms up for Father to pick her up.

*Id.* at 16. Based on the foregoing, Father concludes that the trial court failed to consider whether a natural parental bond existed between him and Children and whether termination would destroy that relationship. *Id.* at 15.

Contrary to Father's claim, however, it is apparent that the trial court carefully weighed the bond between Father and Children in deciding whether termination was in Children's best interest.

> Counsel for both parents spoke eloquently about this existing bond in their closing arguments[,] and this [c]ourt heard evidence about that bond. That evidence included [L.M.'s] attachment to [Father]; the things that they did together; the fact that he asked for him at the visits….
>
> However, the Superior Court in interpreting the Adoption Act has held that the health and safety of the child supersedes all other considerations. That interpretation comes from … *In re: T.S.M.*[, *supra.*].
>
> So[,] when [the court] consider[s] a child's needs and their welfare, [the court must] consider the role of a parental bond in the children's life. [The court is] required by prior cases to fully consider whether a parental bond exists to such an extent that severing that natural relationship would be contrary or harmful to the needs and the welfare of the child.
>
> The Pennsylvania Supreme Court has observed that delicate balance between preserving the family unit and presenting a state of constant uncertainty and limbo for children who have no reasonable prospects whatsoever for returning home to the care of their natural parents.
>
> In such a case, our Supreme Court has observed that when the disruption of the family, like here, … has already occurred and there is no reasonable prospect for reuniting the family without

serious emotional harm to the children, the issue is not whether or not the state should intrude to disrupt an ongoing family relationship, because it's already been disrupted in the case before me with the intervention of OCY, but whether the state should seek to preserve or hold fast to a relationship in law that no longer exists in fact, with the result that these children are consigned indefinitely to the limbo of foster care or the impersonal care of institutions….

In this case[,] the testimony clearly establishes that there is affection[,] and the birth parents care for and interact with [] [C]hildren.  [Father] has maintained throughout his visits consistent contact, and … there is somewhat of a bond between the birth parents and [] [C]hildren.

Despite a parent's wishes and desires to preserve a parental bond or role, in cases where the parent is incapable of providing even basic necessities[,] the focus of this [c]ourt is not on the parent's wishes and desires, but on the child's need for safety, permanency, security, and their well-being.

…

Despite the bond, [the court has] not heard any evidence that the birth parents are ready to go home with [Children] today. Today is your day in court.  Father does not have a home.  He hasn't attended the anger management that he needs to control his rage….

[Children's] safety is this [c]ourt's paramount concern. Foster care is not a place for children to grow up in.  That sentiment is taken from [s]ection 101(b)(7) of the Pennsylvania Adoptions and Safe Families Act.

In this case[,] the testimony clearly established that there is affection[,] and [the court finds] that there is a minimal parental bond between birth parents and [Children;] however, [the court finds] that a stronger bond exists between [Children] and their foster parents.  [The court] heard testimony of the significant improvement of [Children].  [The court] heard of the affection, the tenderness, the caring of the foster parents, [and] the concern.

N.T. Termination at 150-153.  The court concluded from the evidence presented and the testimony given, that termination of Father's parental

rights best serves the needs and the welfare of Children, and that Children will not be irreparably harmed by this termination. *Id.* at 153.

OCY agrees with the trial court that a stronger bond exists between Children and their foster parents and offered the following argument in support of its conclusion:

> Children call the foster parents "Mom and Dad." [] Children have developed a close relationship with the foster parents' extended family and their biological son is considered a sibling. The [foster parents] obtained the extensive and necessary dental work that L.M. required when placed in their home with eight cavities and brown spots on his teeth at 4.5 years old, including fillings, crowns and possible extraction. The [foster parents] actively advocate for L.M. and participate in his therapy appointments in the home to help him control emotions. Fortunately, these efforts paid off, and L.M. has not experienced a 45-minute – 1 hour tantrum since November of 2017. Ms. Dolan and Ms. Michaels [(a foster care unit supervisor for Friendship House)] both acknowledge the tremendous progress L.M. has made in the foster home. Likewise, S.M., placed in the home at age 2.5 years old and unable to walk or talk well, was behind on six vaccinations. The foster parents have worked with the pediatrician to make a plan for her vaccinations. S.M. now runs and talks in full sentences. Ms. Michael observes [] Children to give hugs to the foster parents. Ms. Dolan emphasized that [] Children have thrived.

OCY's Brief at 38-39.

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Children's needs and welfare, as well as its finding that the bond between Father and Children is superseded by the safety of Children and the stronger bond that exists between Children and their foster parents, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27.

- 15 -

Accordingly, we affirm the trial court's decrees terminating Father's parental rights to Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/5/18